**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ahmed S.,

       Petitioner,

v.

Todd Blanche, Acting Attorney General of
the United States; Markwayne Mullin,
Secretary, U.S. Department of Homeland
Security; David Easterwood, Acting
Director, St. Paul Field Office
Immigration and Customs Enforcement;
David J. Venturella, Acting Director of
Immigration and Customs Enforcement;
Joel Brott, Sheriff of Sherburne County,
Minnesota;

       Respondents.

No. 26-cv-2265 (KMM/DLM)

**ORDER**

---

    This matter is before the Court on Petitioner Ahmed S.'s Amended Petition for a Writ of Habeas Corpus.[1] (Dkt. 30.) For the reasons that follow, Mr. S's Amended Petition is granted in part and remains under advisement in part.

---

    [1] United States Magistrate Judge Douglas L. Micko previously issued a Report and Recommendation (R&R) concerning Mr. S's original petition. (Dkt. 11.) While Mr. S amended the petition to assert additional claims related to the government's efforts to remove him to a third country, the Amended Petition raises some of essentially the same claims Judge Micko evaluated in the R&R. Respondents objected to the R&R (Dkt. 18, 24), and Petitioner responded to those objections (Dkt. 32). Given this procedural history, the Court considers the claims from the original petition that are addressed in both the R&R and repeated in the Amended Petition de novo, and in doing so, the Court has taken into account all of the parties' briefing on the issues.

## BACKGROUND

Mr. S is a citizen of Somalia and has lived in the United States for over twenty years. When he was detained by immigration authorities on December 2, 2025, he was residing in Minneapolis. He is currently detained at Sherburne County Jail in Elk River.

Mr. S came to the United States as a Somali refugee in August 2005. He has a lengthy criminal history since his arrival in the United States, including multiple convictions for misdemeanor driving while impaired and chemical-test refusal, misdemeanor assaults, misdemeanor trespass, misdemeanor domestic abuse and violation of orders for protection, misdemeanor theft, and two instances of fourth-degree assault of a peace officer involving the throwing of bodily fluids or feces. (Dkt. 30-2; *see also* Dkt. 7 ¶¶ 9–17, 21–29.) Mr. S suffers from mental health issues. (*See* Dkt. 30-4 ¶ 10.)

Although Mr. S applied in February 2014 to adjust his status to that of a lawful permanent resident, USCIS denied that application. Immigration authorities then charged him as removable due to his criminal history On May 20, 2014, an immigration judge ordered Mr. S removed from the United States to Somalia. (Dkt. 7-1.) However, the immigration judge granted Mr. S's application for deferral of removal, finding that he would more likely than not face torture if he was removed to Somalia. On May 22, 2014, ICE issued a Form I-205 warrant of removal/deportation authorizing ICE agents to take Mr. S into custody. (Dkt. 34-1.) A Form I-205 warrant of removal is the means by which immigration agents obtain authorization to arrest a noncitizen who has been ordered removed to facilitate his deportation from the United States. Pursuant to that warrant, Mr. S was held in detention by Respondents for ninety days as required by 8 U.S.C. § 1231(a)(6);

2

because he could not be removed to Somalia at that time, he was released on an order of supervision ("OSUP"). (Dkt. 30-3 (noting release on OSUP on 8/18/2014).)

Following his release on the OSUP, Mr. S regularly attended scheduled check-ins with immigration authorities. (Dkt. 30 ¶ 39.) Between his August 2014 release and his most recent detention, Mr. S accumulated several of his criminal convictions, including convictions in July 2017 and August 2022 for fourth-degree assault of a peace officer that involved throwing of feces or bodily fluids. (Dkt. 7 ¶¶ 26, 28.) His most recent conviction was in September 2023 for a misdemeanor trespass offense. (*Id.* ¶ 29.)

On December 2, 2025, Mr. S reported to the Bishop Henry Whipple Building at Fort Snelling for a regularly scheduled check-in with Immigration and Customs Enforcement. However, ICE agents took him into custody at that appointment. They did so without a warrant. (Dkt. 30 ¶ 40.) He had not been provided any prior notice that his OSUP had been revoked, nor given any reason for such a revocation. (*Id.*) There is no evidence that immigration authorities served Mr. S with the eleven-year-old Form I-205 warrant before or after his arrest, a warrant that had apparently been executed in 2014. Instead, Respondents issued a Form I-200 warrant for Mr. S's arrest and served it on Mr. S on December 3, 2025, the day after he had been taken into ICE custody. (Dkt. 7-2.) A Form I-200 warrant is used for arrests of noncitizens following the issuance of a notice to appear for removal proceedings. The name and signature of the officials who purportedly issued and served the I-200 warrant in this case are redacted. (Dkt. 7-2.)

Respondents also served Mr. S with a notice of custody determination on December 3, 2026 stating that he would be detained pending a final administrative determination in

3

his case. (Dkt. 7-3.) On March 5, 2026, Respondents served Mr. S with a notice of continued detention, stating that ICE's reviewing officials had determined that (1) his removal to Somalia was likely in the reasonably foreseeable future, and (2) due to his criminal history, he appeared to be a threat to the public. (Dkt. 7-5.)

Mr. S filed his original habeas petition on April 16, 2026 (Dkt. 1), Respondents filed their opposition to the petition on April 23rd (Dkt. 6, 7), and Mr. S filed a reply on April 30th (Dkt. 8). After the briefing on the original petition was complete, Respondents filed a status report on May 18, 2026 stating, for the first time, that immigration authorities intended to remove Petitioner to Cameroon, a country to which he has never been and has no connection, instead of to Somalia. This notice indicated that Respondents intended to remove Mr. S to Cameroon on May 26th. (Dkt. 9, 10.) United States Magistrate Judge Douglas L. Micko issued a Report and Recommendation on May 19, 2026. (Dkt. 11.) Judge Micko concluded that Petitioner was entitled to release from custody because Respondents did not arrest him pursuant to any valid warrant and had failed to comply with their own regulations concerning revocation of his OSUP. (*Id.*)

Because of the notice of Respondents' imminent plan to remove Mr. S to Cameroon, he soon filed a motion for a temporary restraining order prohibiting that removal. In support of that request, Mr. S argued that the plan to remove him to Cameroon violated his rights to meaningful notice and an opportunity to raise a claim that he cannot be sent there based on a reasonable fear that he face persecution or torture. Mr. S also sought leave to amend his petition to assert a claim that his removal to Cameroon was unlawful. (*See* Dkt. 14, 15.) On May 24, 2026, this Court temporarily enjoined Mr. S's removal until the Court had an

4

opportunity to further consider the issues (Dkt. 19), and the Court set an expedited hearing for May 29th (Dkt. 23). At the hearing, the parties agreed that this Court's temporary restraining order should remain in effect until the Court ordered otherwise. The Court also set a schedule for the filing of an Amended Petition and the Respondents' response to the amended pleading. (Dkt. 25.)

On June 8, 2026, Petitioner filed his Amended Petition and Respondents answered on June 15, 2026. (Dkt. 30, 34.) On June 17th, Mr. S filed a status report advising the Court about the status of pending administrative proceedings before the immigration court. In the status report, Mr. S explained that, as alleged in his Amended Petition, on May 29, 2026, he filed a motion in immigration court to reopen his removal proceedings and an emergency motion to stay his removal to Cameroon. On June 8, 2026, the immigration judge granted his request for a temporary stay of removal, but his motion to reopen proceedings remained pending. (Dkt. 35, 35-1.)

On June 4, 2026, six months after Mr. S was taken into custody by ICE, Respondents at last provided him a notice of revocation of his OSUP. The notice explains that his August 18, 2014 OSUP was being revoked due to his 2017 and 2022 fourth-degree assault-of-a-peace-officer convictions and a 2018 fourth-degree damage to property conviction. (Dkt. 34-2 at 2–3.) On June 4, 2026, a deportation officer conducted an informal interview of Mr. S, as required by immigration regulations upon revocation of an OSUP, *see* 8 C.F.R. §§ 241.4(i), 241.13(i), but the form indicates that Mr. S made no statement and refused to sign the document. (Dkt. 34-2 at 1.)

According to Robin Chandler Carr, Mr. S's counsel in his immigration proceedings, Mr. S has moved to reopen his removal proceedings in immigration court "so that he may present a full claim of protection from removal to a third country where he has never lived and where he fears persecution and torture." (Dkt. 30-4 ¶ 8.) Ms. Carr explains that Mr. S has "never previously had an opportunity to present a fear-based claim relating to Cameroon in immigration proceedings," and "Cameroon has never previously been designated as a country to which he could be removed." (*Id.* ¶ 9.) Further, she states:

> [Mr. S's] fear of removal to Cameroon is well-founded. Among other concerns, he suffers from significant mental health conditions and faces removal to a country with severely limited mental health treatment resources. The Motion to Reopen [removal proceedings] seeks an opportunity for [Mr. S] to present evidence regarding his fear of persecution and torture in Cameroon before any removal occurs.

(*Id.* ¶ 10.)

The Amended Petition presents five separate claims. First, Mr. S claims that his continued detention is unlawful because he was not arrested pursuant to a valid administrative warrant and Respondents have not shown that a warrantless arrest under 8 U.S.C. § 1357(a) was authorized under the circumstances. (Dkt. 30 ¶¶ 100–11.) Second, he asserts that his detention violates his Fifth Amendment procedural due process rights because Respondents revoked his OSUP without providing adequate notice and an opportunity to be heard. (*Id.* ¶¶ 112–19.) Similarly, his third claim challenges his ongoing detention because the revocation of his OSUP was unlawful due to Respondents' alleged failure to comply with their own regulations. (*Id.* ¶¶ 120–33.) Fourth, Mr. S claims Respondents revoked his OSUP in violation of his right to substantive due process,

subjecting him to detention where there are no materially changed circumstances to justify his detention and where no valid determination could be reached that he presents a danger to the community. (*Id.* ¶¶ 134–45.) Finally, Mr. S argues that Respondents cannot remove him to Cameroon, nor to any other third country, unless he receives reasonable advance notice of the intent to remove him to that country and an opportunity to present his claims for fear-based withholding of removal before an immigration judge. (*Id.* ¶¶ 146–60.)[2]

For relief, Mr. S asks the Court to "[d]eclare [his] detention unlawful and order [his] immediate release to the same conditions of supervision prior to his unlawful re-detention" and to "[e]njoin Respondents from revoking [his] Order of Supervision or re-detaining him in the future without complying with 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13. (*Id.*, Prayer for Relief ¶¶ 4–5.) The Court construes these requests for relief to concern the claims in Counts One through Four of the Amended Petition. With respect to the third-country removal claim in Count Five, Mr. S seeks an order requiring Respondents "to affirmatively file a motion to reopen [his] removal proceedings (or join his motion to reopen if it remains pending)" to allow him to litigate his "fear-based claim against removal to Cameroon" and to enjoin his removal to Cameroon "until he has a meaningful opportunity to be heard in reopened proceedings with a hearing before an Immigration Judge." (*Id.*, Prayer for Relief ¶ 6.) He seeks similar, though more detailed, relief concerning any attempt by Respondents

---

[2] Judge Micko's R&R focused on Mr. S's claims that appear in Counts One and Three of the Amended Petition. These are the claims where Mr. S asserts that he is in custody in violation of the laws of the United States because he was arrested without a valid or justification for a warrantless arrest and because Respondents failed to follow the applicable regulations when they revoked his OSUP.

to remove him to any other third country not previously identified. (*Id.*, Prayer for Relief ¶ 7(a)–(c).)

## DISCUSSION

District courts may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). Habeas review has long functioned as "a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to seek a writ of habeas corpus for unlawful detention "extends to ... immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

## I.    Unlawful Arrest

Mr. S first claims that he is in custody in violation of the laws of the United States because ICE officers did not arrest him pursuant to an administrative warrant issued in compliance with applicable Department of Homeland Security regulations. "[I]t s not a crime for a removable [noncitizen] to remain present in the United States," so law enforcement may not arrest "someone based on nothing more than possible removability."

*Arizona v. United States*, 567 U.S. 387, 407 (2012). Generally, federal immigration officers need an administrative warrant to arrest a noncitizen for purposes of removal. *Id.* at 408.

Immigration law enumerates two primary types of warrants for immigration arrests: Form I-200 warrants (Warrant of Arrest) and Form I-205 warrants (Warrant of Removal/Deportation). Form I-200 warrants are used to detain noncitizens suspected of violating immigration law and can be issued and executed at any time after immigration authorities issue a notice to appear and the completion of removal proceedings. 8 C.F.R.§ 236.1(b); *see Jouquin C.S. v. Bondi*, No. 26-cv-1438 (DWF/DJF), 2026 WL 483256, at *2 (D. Minn. Feb. 20, 2026) (discussing when I-200s can be issued). Form I-205 warrants are used to detain those already subject to a final order of removal. *See* 8 C.F.R. §§ 241.2 (governing issuance and execution of warrants of removal), 241.3(a) (stating that a noncitizen subject to a final order of removal "will be taken into custody pursuant to the warrant of removal").

The implementing regulations prescribe the appropriate procedure for issuing the two types of warrants. *See* 8 C.F.R. §§ 287.5(e)(2) (listing immigration officers allowed to issue an I-200 warrant of arrest), 241.2 (listing immigration officers allowed to issue an I-205 warrant of removal). In conducting immigration enforcement, executive branch agencies must comply with these regulations. *Saengnakhone S. v. Noem*, No. 25-cv-4775 (ECT/LIB), 2026 WL 34132, at *3 (D. Minn. Jan. 6, 2026) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954) ("Agencies must follow their own regulations.")).

As an initial matter, the Court finds that Respondents did not have an administrative warrant to place Mr. S under arrest prior to taking him into custody on December 2, 2025. In the verified original and amended petitions, Mr. S states that ICE agents arrested him on December 2, 2025 when he attended a regularly scheduled check-in and presented no warrant at that time. Respondents suggest otherwise, stating that they "maintain that Petitioner's arrest was not warrantless." (Dkt. 24 at 3; *see also* Dkt. 34 at 23 (citing Dkt. 24 at 3–5).) But they point to no evidence to support that assertion. Instead, they refer the Court to their response to the original petition in which Respondents' counsel states that the arrest was based on a warrant because a Form I-200 warrant was issued on December 3, 2026. (Dkt. 6 at 7.) But there is neither an allegation nor evidence that the warrant was obtained before Petitioner's arrest rather than after. Respondents cite no authority to support the proposition that an arrest can be made *pursuant to* an administrative warrant issued after the noncitizen has already been taken into custody. Setting aside the obvious logical flaw, courts in this district have rejected this reasoning, and the Court sees no reason to depart from that authority. *Makitio G. A., v. Blanche*, No. 26-cv-2200 (ECT/DLM), 2026 WL 1584457, at *4 (D. Minn. May 22, 2026) ("[I]f a removal warrant for [the noncitizen] was not procured until ... after his ... arrest, that means he was arrested without a warrant."), *R&R adopted*, 2026 WL 1591270 (D. Minn. June 3, 2026); *cf. Pina C.D.B. v. Bondi*, No. 26-cv-1929 (KMM/DJF), 2026 WL 810676, at *2 (D. Minn. Mar. 24, 2026) (collecting cases holding 8 U.S.C. § 1226(a)'s "[o]n a warrant" language to require the issuance of a warrant prior to arrest).

10

Moreover, Respondents do not explain how an I-200 arrest warrant is even applicable in these circumstances. As noted above, the I-200 warrant is used to detain noncitizens when immigration authorities have issued a notice to appear and removal proceedings are either soon to be or are already ongoing. As other courts in this District have observed, under the applicable regulations, immigration authorities are empowered to use a Form I-200 to arrest a noncitizen "only '*up to the time removal proceedings are completed.*'" *Inti C.L. v. Blanche*, No. 26-cv-2777 (PJS/SGE), Doc. No. 10 at 3 (D. Minn. June 9, 2026) (quoting 8 C.F.R. § 236.1(b)(1)) (emphasis added). Here, Mr. S received a final order of removal more than a decade ago. For these two reasons, the Court rejects Respondents' attempt to characterize Mr. S's arrest as having been lawfully made pursuant to an I-200 warrant that was issued after ICE took him into custody.[3]

Next, Respondents point to the I-205 warrant of removal issued for Mr. S in 2014. True, that warrant of removal is the proper form of a warrant to arrest a noncitizen with a final order of removal. However, that warrant was presumably already executed when Mr. S was taken into custody in May 2014 following his order of removal to Somalia.

---

[3] The Court concludes that the I-200 warrant submitted by Respondents in this case cannot simply substitute for an I-205 warrant. As courts have explained, these warrants are not interchangeable because each type of administrative warrant can be issued only by a specified list of officials holding certain positions. *Inti C.L. v. Blanche*, No. 26-cv-2777 (PJS/SGE), Doc. No. 10 at 3–4 (comparing the narrower list of those authorized to issue I-205 warrants in 8 C.F.R. § 241.2(a)(1) with the much longer list for I-200 warrants in §§ 236.1(b)(1), 287.5(e)(2) and explaining that the difference between I-200 and I-205 warrants is not "simply a matter of the wrong caption on an administrative form; the two warrants differ in who is authorized to issue them"). Here, Respondents redacted any information about the immigration official who signed the I-200 warrant (Dkt. 7-2), so the Court will not assume that the official who did sign it was among those also authorized to issue a form I-205 warrant.

Mr. S was then released in August 2014, when ICE could not effect his removal to Somalia (or elsewhere) within ninety days of his detention. Nothing before the Court suggests that a decade old, previously executed Form I-205 for Mr. S can be used in perpetuity. And Respondents do not allege that Mr. S's arrest was actually made pursuant to this archival warrant, nor that the arresting officers were even aware of it. This Court has previously rejected the government's efforts to justify an arrest on an old warrant of removal:

> Respondents attempt to point to a warrant of removal dated November 15, 2001 to justify Mr. V.'s arrest. It appears this warrant was issued shortly after Mr. V. received his final order of removal in September 2001 and prior to his stint in immigration custody in late 2001 and/or early 2002. Respondents say that while the record is "ambiguous whether the 2026 Warrant [of removal] was issued shortly prior to or shortly after Petitioner's arrest, ... there is no ambiguity about the 2001 Warrant." Respondents provide no legal authority supporting that a 25-year-old warrant can be reused in a circumstance like this. Respondents also provide nothing by way of establishing that Mr. V.'s arrest was made "pursuant to" this warrant, 8 C.F.R. § 241.3(a), highlighted by the fact that there is no indication that the 2001 warrant was served on Mr. V. in 2026. Moreover, the concerns with relying on a 25-year-old, possibly-already-executed, and possibly-never-served warrant of removal to establish the legality of this arrest are self-evident.

*Ger V. v. Mullin*, No. 26-CV-2543 (KMM/DTS), 2026 WL 1847044, at *4 n.5 (D. Minn. June 26, 2026). The same is true in this case, and the Court concludes that Mr. S was not validly arrested in December 2025 pursuant to the 2014 I-205 warrant.

Finally, Respondents argue that Mr. S's challenge to the lawfulness of his arrest must fail because it was consistent with the government's warrantless arrest authority under 8 U.S.C. § 1357. Again, the Court disagrees. Under § 1357, an immigration official may

arrest a noncitizen without a warrant "if [the official] has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). This "reason to believe" standard in the statute is equivalent to "constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Here, the Court agrees that ICE officers had probable cause that Mr. S was in the United States in violation of immigration law because he had previously been ordered removed and had violated his conditions of release due to several of his criminal convictions after 2014. But § 1357(a)(2) has two requirements, and both must be met. There must also be probable cause that the noncitizen would be likely to escape before a warrant can be obtained for his arrest.

Here, Respondents have pointed to no evidence in the record that a reasonable immigration officer would have concluded there was probable cause of an escape. Instead, they argue that his arrest was justified because (1) Mr. S's criminal history alone is sufficient to establish that he would flee before a warrant could be issued, and (2) ICE followed the procedures in 8 C.F.R. § 287.3. (Dkt. 24 at 4–5.) But these arguments are not persuasive for several reasons. First, as numerous decisions have held, including prior decisions from this Court, simply because a noncitizen may be subject to removal does not mean that he is a flight risk. *E.g.*, *Pedro D.C. v. Blanche*, No. 26-CV-2450 (KMM/DLM), 2026 WL 1759444, at *2 (D. Minn. June 18, 2026). And here, the record contains ample evidence to support the inference that he was not likely to escape before a warrant could be obtained. Indeed, there is no dispute that Mr. S was arrested at a regularly scheduled

13

check-in with ICE,[4] has lived in Minneapolis for more than twenty years, and has two U.S. citizen children.

Second, Respondents cite no authority to support their conclusory assertion that criminal history alone establishes probable cause of flight before a warrant could be obtained. The Court's own research has identified none. In fact, ICE has an obligation to make a "particularized assessment" into whether a person is likely to evade law enforcement. *Orellana v. Nobles County*, 230 F. Supp. 3d 934, 946 (D. Minn. 2017). The relevant inquiry is not whether the noncitizen has failed to be law-abiding in the past, but "whether immigration enforcement would be able to arrest the noncitizen at 'another clearly identifiable location.'" *Walther Ademir A.S., v. Blanche*, No. 26-CV-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (quoting *Escobar Molina v. U.S. Dep't of Homeland Sec.*, Civil Action No. 25-3417 (BAH), 2026 WL 1256234, at *10 (D.D.C. May 7, 2026)). Respondents point to no evidence in the record to suggest there was reason to believe that if ICE agents took the time to get an I-205 warrant of removal, Mr. S could not have been located.[5] In fact, they could have done so before his December 2, 2025 check-in appointment and arrested him legally there.

---

[4] Respondents imply that this may not be the case, but only by noting that their own paperwork indicates Mr. S was arrested during Operation Metro Surge. (Dkt. 24 at 5 n.2 (citing Dkt. 7-4).) But that innocuous statement from the record is consistent with Mr. S's arrest occurring at a December 2, 2025 check-in at the Whipple building and Respondents point to no evidence contradicting the allegations in Mr. S's verified petitions.

[5] Indeed, the record reflects that immigration authorities know where Mr. S lives in Minneapolis. (Dkt. 7-4.)

Third, Respondents' invocation of 8 C.F.R. § 287.3 is unavailing. Among other things, that regulation provides that (1) an officer other than the arresting officer must promptly interview the noncitizen; (2) the noncitizen must be advised of the reasons for his arrest and his right to be represented at no cost to the government; and (3) a custody determination must be made within 48 hours of the arrest. 8 C.F.R. § 287.3(a), (c), (d). But compliance with those procedural requirements says nothing about whether the preceding arrest itself complied with 8 U.S.C. § 1357(a)(2), and the regulation itself presumes a noncitizen's arrest is made consistent with the statute. *See* 8 C.F.R. § 287.3(a) (referring to an "alien arrested without a warrant of arrest *under the authority contained in section 287(a)(2) of the Act*") (emphasis added).

Courts in this District have repeatedly found that the proper remedy for a warrantless arrest that fails to comply with 8 U.S.C. § 1357(a)(2) is release. *Jairo L. U. G. v. Mullin*, No. CV 26-3051 (JRT/SGE), 2026 WL 1893624, at *2 (D. Minn. July 1, 2026) ("Petitioner's arrest was unlawful, and the proper remedy is to release him."); *Carlos L.V.B. v. Bondi*, No. 26-cv-898 (JWB/DJF), 2026 WL 1231286, at *3 (D. Minn. Mar. 20, 2026) ("[F]or detention that lacks a lawful predicate, release is an appropriate remedy." (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008))); *Ademir A.S.*, 2026 WL 1734906, at *4 (collecting cases and ordering release for unlawful arrest). Consistent with these cases, the Court orders Petitioner's immediate release.[6]

---

[6] Because the Court concludes that Petitioner is entitled to immediate release based on his unlawful warrantless arrest claim, the Court does not consider Petitioner's other claims (Counts Two, Three, and Four) for which he seeks release from custody.

## II.   Third-Country Removal Claim

Mr. S also claims that Respondents' plan to remove him to Cameroon violates the Immigration and Nationality Act ("INA"), the Foreign Affairs Reform and Restructuring Act of 1988 ("FARRA"), and his Fifth Amendment procedural due process rights. (Dkt. 30 ¶¶ 146–60.) He seeks an order requiring Respondents to file a motion to reopen his removal proceedings (or to join his pending motion to reopen) so he may pursue a fear-based claim against removal to Cameroon under 8 U.S.C. § 1231(B)(3), and enjoining his removal to Cameroon until he has a meaningful opportunity to be heard in reopened proceedings before an immigration judge. (*Id.*, Prayer for Relief ¶ 6.) He seeks similar relief with respect to any potential removal to a country other than Somalia or Cameroon. (*Id.*, Prayer for Relief ¶ 7.)

This claim presents difficult questions regarding both the scope of the Court's jurisdiction and statutory interpretation. The Court is not prepared to resolve this claim without further consideration of the myriad issues it presents. But because Petitioner is entitled to release, as discussed above, on the unlawful arrest claim, the Court finds it most efficient to enter this Order now and reserve ruling on the third-country removal claim. However, the Court notes that Mr. S has obtained a stay of removal and already has a motion to reopen those proceedings currently pending before the immigration court. Because a change in the status quo may affect the propriety of adjudicating this claim, the Court requires the parties to promptly update the Court on any developments in Mr. S's pending immigration court matters, including any decision with respect to the stay of removal or to grant or deny his request to reopen removal proceedings.

16

## ORDER

For the reasons discussed above, **IT IS HEREBY ORDERED THAT**:

1. Petitioner Ahmed S.'s Amended Petition for a Writ of Habeas Corpus (Dkt. 30) is **GRANTED IN PART** as stated in this Order.

2. **By 5:00 p.m. on Monday, July 13, 2026,** Respondents shall release Petitioner Ahmed S. within the State of Minnesota and with all of Petitioner's personal effects in Respondents' possession or control.

3. The parties shall promptly advise the Court of any developments in Petitioner Ahmed S.'s ongoing immigration court proceedings that concern the stay of removal and/or his pending motion to reopen removal proceedings.


Date: July 10, 2026                         *s/Katherine M. Menendez*
                                            Katherine M. Menendez
                                            United States District Judge

17