**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ahmed S., No. 26-cv-2265 (KMM/DLM)

Petitioner,

v. **ORDER**

Todd Blanche, et al.,

Respondents.

---

This matter is before the Court on Petitioner Ahmed S's Amended Petition for a Writ of Habeas Corpus. Am. Pet., Dkt. 30. On July 10, 2026, the Court issued an Order granting the Amended Petition in part by ordering Mr. S's release from custody. Order (June 10, 2026), Dkt. 38. Still remaining for resolution is Mr. S's request for an Order enjoining his removal to Cameroon. The Court now grants that aspect of his Amended Petition.

## I. Background

The Court's July 10 Order sets forth the relevant procedural history and factual background in detail, and it is not restated here. Dkt. 38 at 2–7. Since the Court issued that Order, Mr. S has been released from custody. This discussion will focus on those facts relevant to the third-country removal claim.

Mr. S is a native and citizen of Somalia who came to the United States in 2005 as a refugee. In May 2014, an Immigration Judge ("IJ") ordered Mr. S removed from the United States, denied his asylum request, and denied withholding of removal. But the Immigration Judge granted deferral of removal on the ground that he would "more likely than not" face

torture if removed to Somalia. Sabin Decl. ¶ 20, Dkt. 7. Ninety days after he was ordered removed, Immigration and Customs Enforcement ("ICE") released Mr. S on an order of supervision. Am. Pet. ¶ 2. However, on December 2, 2025, ICE agents arrested Mr. S and took him into immigration custody. While the briefing was underway on Mr. S's original petition, the Department of Homeland Security for the first time informed Mr. S that they intended to remove him to Cameroon in just over a week. Mr. S quickly sought a temporary restraining order ("TRO"), asking the Court to enjoin his removal to Cameroon until he had an opportunity to raise a claim of fear of persecution in Cameroon before the immigration courts. TRO Mot., Dkt. 14. On May 22, 2026, this Court entered a TRO preventing his removal to Cameroon or any other third country until it had an opportunity to more fully consider the issue. Order (May 22, 2026), Dkt. 19.

Mr. Said filed his Amended Petition on June 8, 2026, squarely raising a claim that the government's efforts to remove him to Cameroon violated his rights under federal law and the Constitution. Am. Pet. ¶¶ 146–60. Specifically, Mr. S claims that the government's approach to his removal to Cameroon deprived him of adequate notice and a meaningful opportunity to raise a fear-based claim seeking protection from such a removal. And he asserted that his resort to an emergency motion to reopen his removal proceedings before an IJ to present a fear-based claim concerning Cameroon would not be a substitute for the process that he is due. *See id.*

Since the filing of the Amended Petition, the Court has received briefing from both parties and several status updates apprising the Court of ongoing proceedings in immigration court. Through counsel, on May 29, 2026, Mr. S filed an Emergency Motion

to Reopen his removal proceedings and an Emergency Motion for a Stay of Removal before an IJ. Status Report (June 17, 2026), Dkt. 35. The IJ granted the motion for a stay of removal pending a decision on Mr. S's motion to reopen. Dkt. 35-1 at 4. On July 11, 2026, the IJ issued an order to show cause requiring Mr. S's immigration counsel to provide evidence demonstrating why he cannot be removed to Cameroon, including individualized evidence concerning Mr. s's risk of persecution or torture if removed there. Status Report (Aug. 10, 2026), Dkt. 40.

On August 11, 2026, an IJ denied Mr. S's motion to reopen removal proceedings. Status Report (Aug. 12, 2026), Dkt. 41. The IJ rejected Mr. S's motion to reopen, in part, because it was not timely filed. Dkt. 41-1 at 5. The IJ also noted that noncitizens' motions to reopen concluded removal proceedings are discretionary and generally disfavored in light of the government's interest in finality. Dkt. 41-1 at 6. However, the IJ also concluded that Mr. S failed to establish prima facie eligibility for any form of relief because: (1) he had not submitted an affidavit indicating any fear of removal to Cameroon; (2) the expert report submitted by Mr. S's counsel was unpersuasive; and (3) the country conditions reports that counsel provided did not support a conclusion that someone in Mr. S's position would be subject to harmful treatment. Dkt. 41-1 at 6. On September 9, 2026, Mr. S's counsel in this habeas action filed an appeal with the Board of Immigration Appeals ("BIA"), appealing the IJ's August 11 decision denying his emergency motion to reopen removal proceedings. Status Report (Sept. 10, 2026), Dkt. 44.

Mr. S now argues that due process requires that the government be ordered to file its own motion to reopen his removal proceedings. Pet'r's Suppl. Mem. at 4–5, Dkt. 43;

*see also* Am. Pet. at 57, Prayer for Relief ¶ 6 (seeking an order requiring "Respondents to affirmatively file a motion to reopen Petitioner's removal proceedings"). He contends that "[u]ntil that happens, [Mr. S] will have had no meaningful opportunity to be heard on mandatory claims of protection," and his own motion to reopen the proceedings under the circumstances "are a constitutionally-deficient vehicle through which to seek mandatory protection against third country removal." *Id.* at 4–5. Respondents argue that the Court should reject Mr. S's habeas petition. They contend that: (1) the Court lacks subject-matter jurisdiction because Mr. S's release from custody means the case is moot; (2) even if the Court has jurisdiction, the law does not require Respondents to reopen immigration proceedings; and (3) in any event, Mr. S has had the chance to present his claim of a fear of removal to a third country to an IJ, so he has had a meaningful opportunity to be heard. Resp't's Suppl. Mem. at 2–8; Resp. to Am. Pet. at 19–23, Dkt. 34.

## II. Analysis

Under 28 U.S.C. § 2241, the Court may grant a writ of habeas corpus for a petitioner who is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The right to challenge the legality of a person's confinement through a habeas petition extends to case involving immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020). The petitioner has the burden to prove that his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

**A. Jurisdiction**

As an initial matter, this Court rejects Respondents' challenge to the Court's subject-matter jurisdiction. It is true that federal courts' jurisdiction over habeas petitions is traditionally limited to cases where someone seeks to obtain "release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). However, "immediate physical release [is not] the only remedy under the federal writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). In some circumstances, a district court presiding over a habeas case has the authority to hear a claim seeking an injunction against removal if that claim presents a pure question of law. *Jama v. Immigration and Naturalization Serv.*, 329 F.3d 630, 632 (8th Cir. 2003).

Respondents argue that the Court lacks jurisdiction because: (1) Mr. S is a member of the class certified in *D.V.D. v. U.S. Department of Homeland Security*, 778 F. Supp. 3d 355 (D. Mass. 2025); and (2) the first-to-file rule and res judicata deprive the Court of jurisdiction. Resp. to Am. Pet. at 13–19. The Court rejects these arguments for the same reasons it found identical positions unpersuasive in *Ansumana S. v. Blanche*, No. 26-cv-3371 (KMM/DJF), 2026 WL 2606655, at *8–11 (D. Minn. Sept. 3, 2026). The Court incorporates that analysis here and finds it unnecessary to repeat it given Respondents' familiarity with that decision.[1]

[1] Although Respondents do not concede any issues in their briefing, the Court notes that Respondents generally have recognized this Court's rejection of the government's positions regarding third-country removal in the recent decision in *Ansummana S. v. Blanche*, 2026 WL 2606655. *See* Resp't's Suppl. Mem. at 6–7.

The Court is also not persuaded by Respondents' suggestion that the third-country-removal claim in this case has somehow been rendered moot. Because Mr. S has been released pursuant to this Court's July 10 Order, there no longer appears to be an ongoing case or controversy here regarding Mr. S's detention. But Respondents do not explain how his release also eliminates the existence of a genuine dispute about the lawfulness of the procedures the government has invoked in its efforts to remove Mr. S to Cameroon. And both *Jama* and *J.G.G.* stand for the proposition that a challenge to removal itself can, in very narrow circumstances, be properly addressed through habeas.

For these reasons, the Court will not dismiss the third-country-removal claim in the Amended Petition for lack of subject matter jurisdiction.

**B. Third-Country Removal**

Mr. S claims that the government's plan to remove him to Cameroon violates the Constitution and laws of the United States because he has not had a meaningful opportunity to litigate a fear-based claim concerning removal to Cameroon in reopened proceedings before an immigration court. He argues that his due process rights are not honored simply because he had an opportunity to file a motion to reopen his removal proceedings. As explained below, the Court agrees.

The government ordinarily removes noncitizens from the United States through removal proceedings that take place before an immigration judge. 8 U.S.C. § 1229a. Among other powers, the IJ has the authority to "administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." *Id.* § 1229a(b)(1); 8 C.F.R. § 1240.10(a). The noncitizen may be represented by counsel, receives a reasonable

opportunity to review the evidence against him, can present evidence on his own behalf, and may cross-examine the government's witnesses. 8 U.S.C. § 1229a(b)(4). Based on these procedures, the IJ determines whether the noncitizen is subject to removal under the nation's immigration laws and, if so, the location to which the noncitizen will be removed. 8 U.S.C. § 1231(b)(2); 8 C.F.R. § 1240.10(f).

As this Court has elsewhere explained,[2] federal law provides that a noncitizen can be removed the following countries: (1) a country that he himself designates; (2) the country of which he is a citizen, subject, or national; (3) the country in which he was born; (4) the country in which he has a residence; and (5) a country with a government that will accept him into its territory if removal to the countries described above is not possible or is impracticable. 8 U.S.C. § 1231(b). But the government is expressly prohibited from "remov[ing] an alien to a country if the [DHS Secretary[3]] decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)A). "An alien may seek protection from removal under the regulations that outline our nation's obligations under Article 3 of the Convention Against Torture and

[2] *See Ansumana S. v. Blanche*, No. 26-cv-3371 (KMM/DJF), 2026 WL 2606655, at *2–3 (D. Minn. Sept. 3, 2026) (discussing the process under 8 U.S.C. § 1231(b) and applicable regulations for selecting among removal destinations in removal proceedings).

[3] Section 1231 formerly vested authority in the Attorney General, but that power is now exercised by the Secretary of the Department of Homeland Security. *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 338 n.1 (2005).

Other Cruel, Inhuman or Degrading treatment or Punishment ("CAT")." *Ansumana S.*, 2026 WL 2606655, at *3.

During removal proceedings, an immigration judge is required to notify a noncitizen on the record of the destinations to which removal may be made. 8 C.F.R. § 1240.10(f). There is no specific statutory or regulatory provision that establishes a procedure for a third-country removal to a country that is identified by the government outside of removal proceedings. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019). While it is clear that after removal proceedings have concluded, "DHS retains the authority to remove the alien to any other country authorized by statute," *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021), that authority is not limitless, *Ibarra-Perez v. United States*, 154 F.4th 989, 995 (9th Cir. 2025) (explaining that "there are restrictions on DHS's removal authority" when designated a country after the conclusion of proceedings in immigration court). While the government has "broad discretion to designate a country of removal[, but] it must exercise that authority in the appropriate way[.]" *Wani Site v. Holder*, 656 F.3d 590, 594 (7th Cir. 2011).

When DHS designates a third country to remove a noncitizen outside of removal proceedings, as it has done in this case, the designation must comply with due process. *See Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). The government's practice of informing a noncitizen long after immigration court proceedings have concluded of a removal to a country never considered as a potential deportation destination during removal proceedings without meaningful

notice and an opportunity to be heard on a fear-based claim does not comport with due process. *Ansumana S.*, 2026 WL 2606655, at *11–13; *Folashade O. v. Schilling*, No. 26-cv-2705 (LMP/DTS), 2026 WL 1734877, at *4 (D. Minn. June 16, 2026) (recognizing that "courts around the country have determined that the procedures currently provided by the Government to noncitizens like [the petitioner] to challenge their removal to a third country on fear-based grounds are constitutionally inadequate") (citing cases).

Here, the issue comes down to whether Mr. S got all the process he was due because he was able to file a motion to reopen his removal proceedings, and he persuasively argues he did not. The Court holds that this alone does not give Mr. S the process he is due under the Constitution. As other courts have held, "[s]imply allowing the petitioner *to move to reopen* their immigration proceedings is not enough to satisfy Due Process—the Government must actually reopen proceedings so that the petitioner has a fair and adequate opportunity to be heard." *Pineda v. Noem*, 833 F. Supp. 3d 593, 605 (E.D. Va. 2026); *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *6 (W.D. Wash. Dec. 19, 2025) (same); *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010–11 (W.D. Wash. 2019) (same). Under the circumstances of this case, the Court finds these decisions persuasive.[4]

The test for determining whether the process provided in a given situation is sufficient is derived from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under that framework, a court "must balance: first, the private interest that will be affected by the

[4] In its briefing throughout this case, Respondents do not direct the Court's attention to any other recent third-country-removal cases where courts have found the procedures followed by the government in this area afford a person in Mr. S's position with adequate notice and an opportunity to be heard.

official action; second, the Government's interest; and third; the risk of erroneous deprivation of the private interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards." *Michelson v. County of Ramsey*, 823 F.3d 918, 924 (8th Cir. 2016) (cleaned up). The balance in this case weighs decidedly in Mr. S's favor.

Mr. S has a significant private interest in not being removed to a country where he would face persecution. This is "precisely the type of interest that courts consistently have held is significant enough to justify procedural protections to ensure that individuals who are actually entitled to withholding of removal under § 1231(b)(3) or the Convention Against Torture receive such protection." *Pineda*, 833 F. Supp. 3d at 603 (quoting *Cruz Medina v. Noem*, 806 F. Supp. 3d 536, 549 (D. Md. 2025)); *Ansumana S.*, 2026 WL 2606655, at *11 (finding the petitioner's private interest was significant because "a noncitizen cannot be removed to a country where his life or freedom would be threatened on account of a protected characteristic unless one of several narrow exceptions apply" (quoting *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1009 (S.D. Tex. 2025))); *A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1138 (E.D. Cal. 2025) (same; considering preliminary relief).

The procedures involved here also carry with them a high risk of erroneous deprivation—that is, they present an unreasonable risk that a person in Mr. S's position would be removed to a destination the law forbids. During removal proceedings, the government's regulations provide significant procedural safeguards that guarantee a noncitizen will have a chance to have his fear-based claims concerning a potential

destination heard and considered. Recall that, in that context, an IJ is required to identify the country of removal or other alternatives, and a noncitizen, who has a right to be represented by counsel, is afforded an opportunity to present evidence, including the individual's testimony. If the individual has a fear of being removed to the country proposed, his fear-based claim will be adjudicated by the IJ. At no point in the removal proceedings that resulted in Mr. S's removal order did the IJ designate Cameroon or any other specified country, as an alternative country of removal. That much is not in dispute. Consequently, he has not had an opportunity to test any fear-based claim concerning removal to Cameroon *in removal proceedings*. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102, 135 (D. Mass. 2026) (explaining that a noncitizen cannot raise a fear-based claim regarding a country that the government has not designated for removal during removal proceedings).

And Mr. S has shown why his one-sided motion to reopen is an inadequate substitute. Mr. S had to file an emergency motion to reopen his removal proceedings in immigration court within days after he was scheduled for removal to Cameroon, a country with which he has no previous ties. As the IJ's decision denying that motion to reopen makes clear, such a motion is subject to statutory and regulatory provisions that required Mr. S to seek to reopen within 90 days after his removal order became final. 8 U.S.C. § 1229a(c)(7)(A), (C)(i) (allowing for one motion to reopen filed 90 days after the entry of a final administrative order of removal); *see also* 8 C.F.R. § 1003.23(b)(1) (establishing time and numerical limits on motions to reopen). But the government never indicated any intent to remove Mr. S to Cameroon until many years after that deadline had passed, and

the statutory exception to the 90-day deadline did not apply because Mr. S was not making a motion "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered[.]" 8 U.S.C. § 1229a(c)(7)(C)(ii).

In addition, Mr. S was required to submit his motion to reopen under tight time constraints that significantly curtailed his ability to present evidence to meet his obligation to establish a prima facie eligibility for relief under the CAT. *See Poniman v. Gonzales*, 481 F.3d 1008, 1011 (8th Cir. 2007) (explaining when immigration courts may deny a motion to reopen removal proceedings); *Habtemicael v. Ashcroft*, 370 F.3d 774, 782 (8th Cir. 2004) (noting the noncitizen's obligation to show a reasonable likelihood of success on the merits to meet his burden on a motion to reopen). As Mr. S explains, he had only a short period to "compile country conditions evidence, to locate an expert on country conditions in Cameroon, and to solicit an expert report." Pet'r Suppl. Mem. at 7. That type of showing would not have been necessary if Cameroon had been designated as a potential country of removal during Mr. S's removal proceedings. Under that circumstance, Mr. S could have raised his fear-based claims and the IJ would have been required to decide those claims "after an evidentiary hearing to resolve factual issues in dispute." 8 C.F.R. § 1240.11(c)(3). The truncated process Mr. S received through the adjudication of his own motion to reopen was insufficient. *See Aden*, 409 F. Supp. 3d at 1010 ("The Fifth Amendment requires that ICE provide a meaningful opportunity for petitioner's claim of fear to be heard. The

guarantee of due process includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim.").[5]

Moreover, the discretionary nature of the IJ's consideration of Mr. S's motion to reopen[6] is not consistent with the government's "affirmative obligation to make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010. As the *Aden* court made clear:

> Giving petitioner an opportunity to file a motion to reopen – a motion which seeks discretionary relief that may be denied without any sort of hearing – is not an adequate substitute for the process that is due in these circumstances. "The importance of an asylum or withholding applicant's testimony cannot be overstated," and requiring petitioner to make a compelling and credible showing of fear of persecution through a declaration in support of a motion to reopen is not an adequate substitute.

*Id.* (quoting *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013)); *see also Portilla v. Warden of the Golden State Annex ICE Det. Facility*, No. 1:26-cv-00494-EPG-HC, 2026 WL 2339445, at *5 (E.D. Cal. Aug. 12, 2026) ("Due process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator. This requirement is not satisfied by simply providing Petitioner the time and opportunity to file

---

[5] To be clear, the Court is not opining on whether the IJ that addressed Mr. S's motion to reopen reached the correct, or even a permissible, decision. Indeed, the Court considers that type of conclusion beyond its purview. Rather, the Court is observing that the motion-to-reopen process is inadequate to protect Mr. S's constitutional right to due process of law when he seeks to litigate the propriety of his removal to a country that was not designated as a potential destination until many years after his removal order became final.

[6] *See* 8 C.F.R. § 1003.23(b)(3) (explaining that the immigration judge has discretion over the decision whether to grant or deny a motion to reopen).

a discretionary motion to reopen his immigration proceedings." (quoting *A.A.M.*, 815 F. Supp. 3d at 1140–41)).[7] Moreover, the Court notes that the First Circuit's recent decision addressing the adequacy of the procedures the government currently provides with respect to third-country removals implies that a meaningful opportunity to be heard requires "hearing-related procedures." *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 26-1212, 2026 WL 2797801, at *15 (1st Cir. Sep. 18, 2026) ("[T]he question is whether [the government's streamlined] process is consistent with the applicable statutes and regulations that presently govern fear-of-persecution claims. As the district court properly concluded, it is not. *The statute and regulations prescribe hearing-related procedures for fear-of-persecution claims with no exception for third-country removals*.") (emphasis added).[8]

The *Mathews* test also requires consideration of the government's interest and the burden associated with requiring additional procedures. Certainly, requiring the government to reopen removal proceedings under these circumstances will carry with it

---

[7] The Respondents do not point to any cases involving similar facts here where a court has determined that a noncitizen who unsuccessfully sought to reopen his removal proceedings like Mr. S has received a meaningful opportunity to be heard, consistent with the hearing-related procedures contemplated by the applicable statute and regulations.

[8] On September 24, 2026, DHS asked the Supreme Court to stay the order issued by the district court in *D.V.D. Dep't of Homeland Sec. v. D.V.D.*, No. 26A406 (Sept. 24, 2026). The Supreme Court granted the application for a stay, treated the application as a petition for a writ of certiorari, and granted the petition. The Court also directed the parties to brief the following issues: whether the district court had jurisdiction over the plaintiffs' claims; whether the district court had the authority to issue class-wide relief in light of 8 U.S.C. § 1252(f)(1); whether the government's third-country removal guidance is unlawful under the relevant statutes and the Due Process Clause; and "[s]uch other questions that the Government determines are appropriate for the proper disposition of the case." *Dep't of Homeland Sec. v. D.V.D.*, No. 26-246 (Sep. 29, 2026), https://www.supremecourt.gov/qp/26-00426qp.pdf.

additional burdens. But the regulations already require this very review in removal proceedings themselves. *Pineda*, 833 F. Supp. 3d at 604 (finding the "burden of affording IJ review of Petitioner's negative fear determination is minimal, particularly … where the regulation provide such review in several other contexts"). Here, the burden of providing these additional procedures to Mr. S is outweighed by the public's interest in preventing removal of noncitizens to countries where they are likely to face substantial harm as federal law prohibits. *See A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1138 (E.D. Cal. 2025) (considering likelihood of success on the merits of procedural due process claims and acknowledging "the government has an interest in the steady enforcement of its immigration laws, but that interest is mitigated because the effort and costs required to provide Petition with procedural safeguards is minimal"); *cf. Nguyen v. Scott*, 796 F. Supp. 3d 703, 739 (W.D. Wash. 2025) (considering the public interest in granting preliminary relief).

For these reasons, the Court grants Mr. S's request for an order enjoining his removal to Cameroon or another third country without notice and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED THAT** Respondents are **ENJOINED** from effectuating Petitioner's third-country removal to Cameroon unless and until Respondents provide him with a meaningful opportunity to respond to such a removal in reopened removal proceedings with a hearing before an immigration judge.

**Let Judgment be entered accordingly**.

Date: October 6, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge